IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

RONNIE L. EWINGS,

     Petitioner,

v.                                                       CIVIL ACTION NO. 1:11cv153
                                                             (Judge Keeley)

TERRY O'BRIEN,
Warden, USP Hazelton,

     Respondent.


## REPORT AND RECCOMENDATION

### Introduction

On September 29, 2011, Petitioner, by counsel, filed a Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2241. (Doc. No. 1, P. 1). On November 16, 2011, Respondent filed a Motion to Dismiss or, in the alternative, for Summary Judgment. (Doc. No. 10, P. 1). Petitioner filed a response on November 30, 2011. (Doc. No. 14, P. 1). Respondent filed a reply on December 14, 2011. (Doc. No. 16, P. 1). This matter is now pending before the undersigned for a Report and Recommendation pursuant to the LR PL P 2.

### Factual History

In 1994, the Superior Court for the District of Columbia sentenced Petitioner to an aggregate term of twenty-seven years of imprisonment under two criminal cases. (Doc. No. 10-4, P. 1) More specifically, the Court imposed a twelve-year sentence on June 16, 1994 in Case No. F8590-92 and a consecutive fifteen year sentence on June 20, 1994, in Case No. F876-94.[1]

---

[1] In Case No. F8590-92, Petitioner pled guilty to Attempted Possession with Intent to Distribute Cocaine. (Doc. 10-1). In Case No. F876-94, Petitioner pled guilty to f Possession of a Firearm During a Crime of Violence and Assault with a Dangerous Weapon. (Doc. 10-2).

1

Petitioner became eligible for parole on October 4, 2001. (Doc. No. 10-4, P. 8). The Parole Commission held an initial hearing on June 28, 2001, at which it denied parole release and scheduled Petitioner for reconsideration in 2004. (Doc. No. 10-5, P. 1). At the 2004 hearing, the Parole Commission authorized parole release to take effect on May 5, 2005. (Doc. No. 10-7, P. 1). Although Petitioner's 27-year sentence was not due to expire until January 6, 2021, the parole certificate issued by the Parole Commission mistakenly listed May 15, 2006 as the termination date of his parole supervision. (Doc. 10-8, P. 1).

On April 4, 2006, the Parole Commission issued a revocation warrant against Petitioner for administrative violations. (Doc. No. 10-9, P. 3). Despite the mistake contained in the initial parole certificate, the warrant correctly identified the expiration date of Petitioner's parole supervision as January 6, 2021. (Doc. No. 10-9, P. 3). The warrant was executed April 18, 2006, at which time Petitioner acknowledged receipt of a copy of the warrant application. (Doc. No. 10-9, P. 2). Ultimately, the Parole Commission found that the administrative violations were insufficient to support a revocation proceeding. Accordingly, Petitioner was issued a Notice of Action, dated May 1, 2006, which terminated the revocation process and reinstated him to supervision. Petitioner was directed to report immediately to his Community Supervision Officer. (Doc. No. 10-10, P. 1).

On April 30, 2007, Petitioner stabbed a man who attempted to break up an argument between him and a female acquaintance. (Doc. No. 11-4, P. 4). On July 23, 2007, Petitioner pled guilty before the Superior Court of the District of Columbia to Assault with a Dangerous Weapon. (Doc. No. 11-2, P. 1). A PSR was completed and signed on September 11, 2007, by Community Supervision Officer Paul Washington of the Court Services and Offender Supervision Agency

("CSOSA") for the District of Columbia. The completed PSR included the following statement: "According to SMART, the defendant completed his parole on 5-15-06…However, please note SENTRY indicates…a full term expiration date of 1/6/2021. JACCS also confirms this expiration date." (Doc. No. 11-2, P. 7). A sentencing hearing was held on October 11, 2007. At the hearing, Counsel for Petitioner acknowledged the confusion in the PSR regarding the correct date of parole termination.[2] (Doc. No. 10-22, P. 8). Without ruling on Petitioner's parole status, the Superior Court for the District of Columbia sentenced Petitioner to 48 months incarceration. (Doc. No. 10-11, P. 1).

On September 26, 2007, prior to Petitioner's sentencing, CSOSA ordered Petitioner's parole file re-activated. (Doc. 10-19, p. 2). On October 3, 2007, Petitioner's Community Supervision Officer, Kim Padilla, contacted the United States Parole Commission and advised that she believed the original parole certificate contained an incorrect termination date, and confirmed that the correct full-term date was January 6, 2021. (Doc. No. 10-12, P. 1). On October 12, 2007, four days after Petitioner's sentencing for the stabbing, Padilla submitted an Alleged Violation Report to the U.S. Commission based on Petitioner's assault alleged to have occurred on May 18, 2007. (Doc. 11-3). On October 25, 2007, the Parole Commission issued an amended parole certificate, correcting the parole termination date to January 6, 2021. (Doc. No. 10-13, P. 1). That same day, the Parole Commission also issued a revocation warrant based upon the

---

[2] Specifically, defense counsel stated as follows: "First of all with respect the Presentence Report itself, the only discrepancy that I see is there – there seems to be some discrepancy in the respect as to whether Mr. Ewings is on supervised release or parole at the time this occurred, and he – he was not on either. He had finished out every previous sentence and was no longer on parole or supervised release, so I just wanted to clear this up." The prosecuting attorney, who appeared at the sentencing, was standing in for the assigned prosecutor, and apparently and been asked to stand in just moments before the hearing. (Doc. 10-22, p. 2). Accordingly, it seems the prosecuting attorney who appeared at the sentencing hearing was not familiar with the case, and in particular, was not familiar with the PSR. Therefore, the issue of Mr. Ewings' parole status was not discussed any further.

assault conviction. (Doc. 10-17, pp. 2-3). The warrant was placed as a detainer against petitioner pending completion of his 2007 sentence.

Petitioner's revocation hearing was conducted on February 1, 2011. Petitioner was represented by Richard Walker, Federal Public Defender Service. The Hearing Examiner noted that Petitioner was very articulate and expressed his remorse for the 2007 stabbing offense. The Hearing Examiner further noted that Petitioner was very candid in his description of the incident and explained that he was completely wrong for what he did to the victim. The Hearing Examiner also noted that Petitioner had made great strides in changing his abhorrent behavior as was exemplified in his high level of programming. However, the Hearing Summary also noted Petitioner had committed three disciplinary infractions during his current incarceration.[3] The Hearing Examiner recommended that parole be revoked with none of the time spent on parole to be credited. The Hearing Examiner further recommended that Petitioner be continued to a presumptive parole on November 21, 2015, after service of 57 months from the date the warrant was executed. (Doc. 10-17).

Following the hearing, the Parole Commission ordered execution of the revocation warrant as of February 22, 2011, the date on which Petitioner finished serving his 48-month sentence on the 2007 conviction, revoked his parole, ordered loss of credit for time on parole, and issued a presumptive reparole date of November 2, 2015, after service of 102 months. (Doc. No. 10-17, pp. 2-3).

---

[3] The infractions were all for drug use or possession of drugs, and the petitioner admitted to two of the charges during the DHO hearings on those charges. (Doc. 10-17, pp. 2-3).

On April 28, 2011, Petitioner appealed this decision, alleging among other things, that he was not on parole at the time of the assault. (Doc. No. 10-20, P. 3). The Parole Commission affirmed the prior decision, stating that "a prisoner has no constitutional right to object to the correction of an unintentional miscalculation of his sentence." (Doc. No. 10-21, P. 1).

## Contentions of the Parties

In support of his pending petition, Petitioner argues that no person should be held to answer for an alleged violation of parole when the person was not on parole at the time. Moreover, Petitioner contends that the fact that he was not on parole at the time of the 2007 stabbing is not in dispute. Petitioner further alleges that the Parole Commission refused to admit that it acted improperly and ignored that the parole violations were flawed to the extent he lacked notice and was deprived of his due process rights. For relief, the petitioner asks this Court to grant his Petition and vacate the 102 month prison sentence and dismiss the United States Parole Commission proceedings against him.

In response to the petition, Respondent argues that a prisoner has no constitutional right to object to the correction of an unintentional miscalculation of his sentence. In addition Respondent argues that Petitioner's due process claims lack merit because the Commission's decisions were discretionary decisions rationally supported by the record, and not an abuse of discretion.

## Standard of Review

A. **Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); See Also Martin at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly at 554-55. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B.** Summary Judgment

The Supreme Court has recognized the appropriateness of Rule 56(c) summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 (1977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Circ. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment, Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The

nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita at 587.

## Analysis

This case appears to present an issue of first impression in federal court. The undersigned has found no decision by the United States Supreme Court, the Fourth Circuit Court of Appeals, or any other federal court addressing whether, under the Due Process Clause, an individual can be held accountable for a parole violation when he or she had been mistakenly discharged from parole prior to the supposed violation. However, federal courts have addressed similar legal issues, and these cases will inform the analysis of the instant petition.

First, it is pertinent to note that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 7 (1979). When granting or denying parole, "the Parole Commission does not modify a trial court's sentence, but merely determines whether the individual will serve the sentence inside or outside the prison walls. Artez v,. Mulcrone, 673 F.2d 1169, 1170 (19th Cir. 1982); Wallace v. Quarterman, 516 F.3d 351, 355 (5th Cir. 2008) (parole is not a right but only an exception' parole commission makes discretionary determination of prisoner's suitability for release, rather than his eligibility, which is determined by the length of sentence.)

Moreover, as a general rule, federal courts have been reluctant to find a constitutional violation when an individual is incarcerated after a period of freedom mistakenly given by the government. See Hawkins v. Freeman, 195 F.3d 732 (4th Cir. 1999) (No constitutional violation where petitioner was re-incarcerated after twenty months on mistakenly-given parole); United States v. Martinez, 837 F.2d 861 (9th Cir. 1988) (No constitutional violation where petitioner was finally incarcerated more than seven years after sentencing); Piper v. Estelle, 485 F.2d 24 (5th Cir. 1973) (No constitutional violation where state failed to file detainer against petitioner until more than 22 months after parole revocation). However, exceptions to this trend can occur in particularly egregious cases, ones that involve affirmative governmental misconduct and significant prejudice towards the individual. See Johnson v. Williford, 682 F.2d 868 (9th Cir. 1982)(Court granted writ of habeas corpus to individual that was re-incarcerated 15 months

after being mistakenly placed on parole, relying on the fact that the individual did not know of the error and relied on it to his detriment).[4]

Courts have acted similarly when faced with the issue of whether the United States Parole Commission can execute a valid revocation warrant after the parolee has been erroneously discharged from parole, tending to find no constitutional violation in the absence of affirmative governmental misconduct or significant prejudice to the individual. See Ward v. United States Parole Commission, 233 Fed. Appx. 360 (5th Cir. 2007); Russie v. United States Department of Justice, 708 F.2d 1445 (9th Cir. 1983).

In this case, Respondent's Motion to Dismiss or, in the alternative, for Summary Judgment should be granted because Petitioner failed to show that the exercise of jurisdiction by the United States Parole Commission involved affirmative governmental misconduct or significant prejudice towards himself. Turning first to the issue of affirmative governmental misconduct, nothing in the record indicates that the actions taken by the United States Parole Commission extended beyond mere negligence. The record indicates that the incorrect termination date was discovered by Petitioner's Community Supervision Officer on October 3, 2007. Only twenty-two days later, on October 25, 2007, the Parole Commission issued a corrected parole certificate and a revocation warrant based upon Petitioner's supposed parole violation. The fact that the Parole Commission corrected the mistaken termination date almost immediately after they discovered it provides strong evidence for the absence of affirmative governmental misconduct in this case.

---

[4] It is pertinent to note that the petitioner in Johnson had not committed a subsequent offense, thus distinguishing his situation from that of the petitioner herein.

Turning next to the issue of prejudice, Petitioner contends that he was prejudiced by the exertion of jurisdiction by the Parole Commission because his original parole certificate conveyed that he was off of parole at the time of the 2007 assault, and he therefore had no notice of a possible parole violation. Furthermore, Petitioner argues that, if he would have had notice of a possible parole violation, he would not have pled guilty to the 2007 assault charge. This contention simply has no merit. The record indicates that Petitioner had notice of the potential mistake related to his parole termination more than one year prior to him entering a guilty plea for the 2007 assault charge. Specifically, the revocation warrant against Petitioner issued on April 4, 2006 correctly listed the termination date as January 6, 2021, and Petitioner acknowledged receipt of a copy of the warrant application. Additionally, the discrepancy related to the parole termination dates was addressed in both the PSR and the sentencing hearing, yet petitioner made no effort to withdraw his plea. Put simply, Petitioner was not prejudiced by the exertion of jurisdiction by the Parole Commission because he had notice that his original parole certificate contained the incorrect parole termination date.

Because the exertion of jurisdiction by the United States Parole Commission did not involve affirmative governmental misconduct or significantly prejudice the Petitioner, Petitioner's due process rights were not violated, and Respondent's Motion to Dismiss or, in the alternative, for Summary Judgment should be granted.

## Recommendation

In consideration of the foregoing, it is the undersigned's recommendation that Respondent's Motion to Dismiss, on in the Alternative, for Summary Judgment(Doc. 9) be

**GRANTED**, and the Petition for Writ of habeas Corpus pursuant to 28 U.S.C. § 2241 be **DENIED AND DISMISSED WITH PREJUDICE**.

Within fourteen (14) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Court Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. The Clerk is further directed to provide a copy of this Report and Recommendation to any counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Dated: June 19, 2012

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE